AO 91 (Rev. 12/93) Criminal Complaint

REDACTED

# United States District Court

DISTRICT OF         DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RUTH C. FALLIS<br><sub>(Name and Address of Defendant)</sub> | **Criminal Complaint**<br><br>Case No. 06- 82 M |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

From in or around December 2001, through in or around October 2005, in New Castle County, in the District of Delaware, defendant(s), (Track Statutory Language of Offense)

caused the interstate transportation of stolen/fraudulent securities of the value of $5,000 or more and, having devised a scheme to defraud, made interstate telephone calls to the IRS in execution of the fraud

in violation of Title    18    United States Code, Section(s)  2314 and 1343

I further state that I am a(n)  Detective, Delaware State Police    and that this complaint is based
<sub>Official Title</sub>

on the following facts:

SEE ATTACHED AFFIDAVIT

FILED
JUL 5 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Continued on the attached sheet and made a part hereof:   YES

Signature of Complainant
Douglas Deveney
Detective
Delaware State Police

Sworn to before me and subscribed in my presence,

July 5, 2006                                       at      Wilmington, DE
Date                                                         City and State

Honorable Kent A. Jordan
United States District Judge                                 /s/ Kent A. Jordan
Name & Title of Judicial Officer                             Signature of Judicial Officer

## AFFIDAVIT OF DOUGLAS P. DEVENEY

I, Douglas P. Deveney, being duly sworn, depose and say:

1. Your affiant is employed as a Detective with the Financial Crimes Unit, Troop 2, Delaware State Police (DSP), and has been with that unit for over one year. I have been employed as an officer with the DSP for over nine years.

2. This affidavit is submitted in support of an application for a criminal complaint and warrant for the arrest of Ruth Fallis for causing the interstate transportation of stolen securities in violation of 18 U.S.C. § 2314 and for committing wire fraud in violation of 18 U.S.C. § 1343. The information contained in this affidavit is based upon my personal knowledge gained by reviewing various financial and business records, interviewing witnesses, and speaking with other law enforcement officers involved in this investigation. The contents of this affidavit do not reflect the sum total of information learned during the investigation.

### Summary of the Offense

3. From 1993 until the latter part of 2005, Ruth Fallis was employed as a bookkeeper for the Perry Anthony Design Group (PADG) in Delaware. In her role as bookkeeper, Fallis was responsible for collecting the daily receipts (including cash) from PADG, reconciling the receipts, depositing the cash and check portions of the receipts into PADG's bank account, and making the quarterly federal tax deposits. Fallis also had unrestricted access to the PADG checkbook. Sometime in or around the latter part of 2001, as detailed below, Fallis began embezzling money from PADG. She embezzled the money in at least two ways: (a) by forging checks totaling over $500,000 from PADG's account to herself and to companies/vendors to whom she owed money for personal expenses such as credit card purchases and home improvements; and (b) by stealing at least a portion (totaling in the hundreds of thousands of dollars) of the cash receipts that she was responsible for depositing into the PADG account. As detailed below, in order to hide the theft, in 2002, Fallis stopped making the quarterly federal tax deposits on behalf of PADG and diverted all calls and notices from the IRS to herself, so that the owner of PADG would not learn of the tax liability and/or embezzlement.

### Discovery of the Embezzlement

4. Sometime in 1999, on behalf of PADG, Fallis entered into an agreement with Century Business Solutions (CBS), a payroll service company, for CBS to process the payroll for PADG. In an interview your affiant conducted with the president of CBS, the president confirmed that, as part of this agreement, Fallis retained responsibility for making the federal tax deposits. However, IRS records show that PADG failed to make its quarterly payroll tax payments from 2002 through the third quarter of 2005. Your affiant submits that Fallis stopped making the quarterly tax deposits in order to cover up her embezzlement scheme. IRS records show that in or around April or May 2005, the IRS started sending delinquency notices to PADG, addressed to Perry Scarfo, the owner of PADG. However, Fallis diverted the notices and, beginning on or about June 23, 2005, Fallis, pretending to be Scarfo's wife, placed several telephone calls to the

IRS and discussed the tax delinquency.

5. In February 2006, your affiant and John Davids, a Special Agent with the Treasury Inspector General for Tax Administration, interviewed Perry Scarfo, owner of PADG. Scarfo stated that he had hired Fallis in 1991 or 1992 as a bookkeeper for PADG. He had no indication that Fallis was doing anything improper until September 2005 when he received a delinquency notice from the IRS. Scarfo contacted Fallis and asked her about the notice. Fallis stated that there must be a mistake and that she would take care of it. Fallis later told Scarfo that she had contacted the IRS who had told her that they had made a mistake with tax identification numbers. Scarfo was relieved until late September 2005 when he received several lien notices from the IRS. Scarfo learned from his bank that the IRS had placed a lien on his business account. At that point, Scarfo contacted his accountant, Michael Dunning, and asked him to handle the matter.

6. Also in February 2006, your affiant and Special Agent Davids interviewed Michael Dunning, Scarfo's accountant. Dunning stated that he contacted the IRS on behalf of Scarfo and discovered that Scarfo had a tax liability of approximately $850,000 and that, with penalties and interest, the total PADG owed to the IRS came to approximately $1,300,000. The IRS informed Dunning that this involved 941 trust fund taxes that were never paid to the IRS for all quarters of 2002, 2003, 2004 and three quarters of 2005. Dunning stated that he met with Fallis in early October 2005 to ask her why she had not paid the taxes. Fallis told him that she had not made the quarterly tax deposits because there was not enough money. Dunning asked why Fallis, rather than CBS, the payroll company, had the responsibility of making the tax deposits. Fallis stated that she had told CBS that she would handle the tax deposits, but she hadn't. Fallis told Dunning that she was working with the IRS in Richmond, Virginia to try and work things out. Dunning asked Fallis how she was able to obtain information from the IRS on Scarfo's behalf. Fallis stated that she was embarrassed, but that she had impersonated Scarfo's wife. Fallis asked Dunning not to tell Scarfo that she hadn't made the tax payments.

7. Dunning informed Scarfo of his conversation with Fallis. Until then, Scarfo thought that CBS, the payroll company, was responsible for making the payments and that the payments were being made because that is what Fallis had told him. When Scarfo and Fallis held their biweekly balance meetings, Fallis had a deduction on the profit and loss sheet indicating the appropriate deductions for taxes.

8. On March 1, 2006, Special Agent Davids interviewed Roger Davis, Internal Revenue Agent, Internal Revenue Service, Richmond, Virginia, the agent assigned to the PADG case. Davis said that the case was opened because PADG had not filed their required quarterly IRS Form 941's and quarterly tax deposits since 2001. Davis sent out a letter of inquiry to PADG, addressed to Perry Scarfo, which advised Scarfo to contact him within ten days. When Davis was not contacted in ten days he placed a telephone call to PADG and left a message for Perry Scarfo. After sending a second letter to Scarfo, Davis received a telephone call in June 2005 from a female identifying herself as Perry Scarfo's wife, "Flavia." Davis explained that he was prohibited by law from discussing any tax issues regarding PADG with anyone other than Perry Scarfo, his spouse, or a corporate officer of PADG. Since the female identified herself as

Scarfo's spouse and was listed as an employee of PADG, Davis felt that he could discuss the matter with her. Davis had several conversations with "Flavia" between June and October of 2005, and stated that the returns for 2002 and 2003 were then filed absent the tax due. "Flavia" gave Davis a different telephone number and asked him to call her at that number rather than call her at PADG. In October of 2005, instead of calling the number "Flavia" had given him, Davis called the PADG number and asked to speak with "Flavia." When Flavia answered, she seemed confused and unaware of the tax situation, and Davis realized that this was not the person with whom he had been dealing for the past several months.

9.  Roger Davis provided Special Agent Davids with his Examining Officer's Activity Record. Davis noted in the record that on June 23, 2005, July 21, 2005, July 28, 2005 and September 29, 2005, he had received telephone calls from a female identifying herself as "Flavia Scarfo." During the first telephone call on June 23, 2005, Davis noted that "Flavia" provided him with telephone number                as the number at which to contact her. According to telephone company records, that telephone number is subscribed to by Mathias J. and Ruth C. Fallis in Hockessin, Delaware.

### The Embezzlement Scheme

10. Through interviews, your affiant learned that on October 3, 2005, after having learned of PADG's tax liability, Dunning requested that Fallis turn over all PADG business records that she had at her house. The records Fallis turned over were incomplete - checks were missing, the check registry was missing, and most, if not all of the daily deposit sheets were missing. Through records he obtained from the PADG computer, Dunning reconstructed the daily deposit sheets and determined that over $500,000 in cash that PADG had taken in had not been deposited into the PADG account. When Dunning received copies of the missing checks from the bank, he saw that the missing checks had been used by Fallis to pay her personal bills.

11. On October 9, 2005, Scarfo fired Fallis after confronting her with the fact that no cash had been deposited into PADG's account. Scarfo said that he would file criminal charges against her. Fallis responded, "I'll just tell them that I gave all the cash to you, plus my husband is very connected, so I'll never go to jail."

12. During the course of the investigation, your affiant obtained and reviewed the suspect checks. My review determined that Fallis wrote 74 unauthorized checks totaling $557,044.93 off the PADG account either to herself or to pay her expenses. A breakdown of the checks is as follows:

(a) Between December 10, 2001, and June 27, 2005, Fallis wrote 56 checks from the PADG account totaling $462,536.60 to pay her American Express (AmEx) bills. Scarfo acknowledges that he actually signed the first AmEx check, but he denies that he knew that it was being used to pay Fallis' AmEx bill. On the other 55 checks written to AmEx, Scarfo's signature is forged. The forged checks were negotiated through the Bank of New York. Of the 56 checks, 38 were written in the amount of $5,000 or more. A review of Fallis' AmEx statements showed that she used her AmEx card to buy first class plane tickets for herself and her

family, take trips to Europe, go skiing with her family out West, stay at expensive resorts and hotels, and go on shopping sprees in New York City.

     (b)    Between December 8, 2001, and March 19, 2002, Fallis wrote eleven checks from the PADG account totaling $40,913.50 to herself. Of these eleven checks, four were written in the amount of $5,000 or more. Each of the eleven checks was deposited into the defendant's personal bank account.

     (c)    On April 5, 2002, Fallis wrote a check from the PADG account in the amount of $5,716.41 to pay a Diner's credit card bill. This check was negotiated through the Federal Reserve Bank in Salt Lake City, Utah.

     (d)    Between September 15, 2003, and September 27, 2003, Fallis wrote two checks from the PADG account totaling $9,180 to Kelly Landscaping to pay for landscaping work done at her home in Hockessin. One of the checks was in the amount of $5,000 and was negotiated through Wachovia Bank in Philadelphia, Pennsylvania. A representative of Jack R. Kelly Landscape & Tree Inc. confirmed that the company had done work at Fallis' home and that they had been paid with the checks in question. The representative also stated that Fallis had handed the checks to him.

     (e)    Between September 15, 2002, and July 20, 2004, Fallis wrote five checks totaling $43,692 from the PADG account to Tradesman Contractors to pay for work done on her Hockessin home. Four of the checks were in the amount of $5,000 or more, and each was negotiated through the Federal Reserve Bank in Philadelphia, Pennsylvania. The owner of Tradesman Contracting confirmed that he had received the checks in question as payment for work done on Fallis' home.

13.    On May 31, 2006, your affiant met with Perry Scarfo, Flavia Scarfo, and Diane Davalos, the office manager for PADG, and asked them to review copies of the 75 checks that were believed to be forged/fraudulent. After reviewing the checks, Perry Scarfo, Flavia Scarfo and Diane Davalos stated that they did not authorize, author and/or sign 74 of the checks. Perry Scarfo stated that one check, dated December 10, 2001, and made out to American Express in the amount of $4721.71, was signed by himself, however, he did not author the check. Perry Scarfo also told your affiant that these business checks were in the possession of Ruth Fallis during the time the checks were authored.

/    /    /    /

## Conclusion

14. In summary, there is probable cause to believe that Ruth Fallis, in order to embezzle money from Perry Anthony Design Group, fraudulently authored and signed checks in the amount of $5,000 or more and then caused these checks to be transported in interstate commerce in violation of 18 U.S.C. § 2314. In addition, by impersonating Flavia Scarfo to Revenue Agent Roger Davis during four separate interstate telephone calls for the purpose of extending and concealing her scheme to defraud, Ruth Fallis committed wire fraud in violation of Title 18 United States Code Section 1343. Therefore, your affiant respectfully requests that the Court issue a criminal complaint and warrant for the arrest of Ruth Fallis.

_____
Douglas P. Deveney, Detective
Delaware State Police


Subscribed and sworn to me before this 5th day of July, 2006.

_____
Honorable Kent A. Jordan
United States District Judge